Number five this morning is Wilson-Trattner v. Campbell. Mr. Eggerson. Good morning. Neil Eggerson on behalf of Jennifer Wilson-Trattner. The issue before the court today is for purposes of a Section 1983 action whether police increase the risk of harm to a domestic abuse victim by communicating to her abuser that police simply are not going to get involved. In this case police actively shielded this particular deputy from any sort of investigation. Police implicitly encouraged this police officer to continue with what he was doing and police failed to train their own The facts are largely uncontested but there are two particularly salient ones which should guide the court's inquiry here. The first one being for all of the years and all of the multiple incidents of domestic violence and police calls that were leveled against Deputy Rager not one appears anywhere in this deputy's personnel file. The personnel file has been completely and utterly can get into a computer system to stalk a new girlfriend. That too no reference to it whatsoever in his personnel file. To support any theory that the police then or the sheriff then emboldened him would you have to in turn show his knowledge that his his personnel file was absent such reprimands or documentation and if there's an absence of his knowledge of that how can the sheriff's conduct have emboldened him? That's fair. We do not have any active evidence in the record that he knew about the contents of his personnel file. We do have reason to believe that he knew that investigations had been started and then those investigative files conveniently disappear for over a year until this case is filed. Did you know they disappeared? I do not know if that has been designated to the court or not. I apologize. Would he have to know that to meet the standard that they somehow their conduct emboldened him? Yes. That in order for an assurance or a communication to take place regardless of whether that's an active or an implicit communication yes he would have to have knowledge of that. He does have knowledge and there is no dispute about this that in one of the incidents in which he chokes out Ms. Wilson-Tratner and bashes her head against a wall police do or sheriff's deputies do come to the scene and they take the victim up to her room stand over her as she's sitting in her bed and then cajole her with threats that we may actually bring charges against you or arrest you. He was present when that occurred. He knew that was happening. In fact that was the second of five incidents? That's correct. Five incidents that have been designated to the court because those are the five incidents of which the sheriff's office was aware. A suggestion had been made in the response brief that those were therefore the only incidents and I want to make clear that that is not the case. But those are the five incidents that were directly communicated for purposes of investigating him. So based on that the question is whether inaction is actually communicating something to this individual. The best way to illustrate it is this. Had Sheriff Campbell sat down with Deputy Rager and said to him look you can you can choke her, bash her head against the wall, you can send out these sexually explicit videos to everyone you want. Go to town. We are not going to get involved. Had we done that there would be very little dispute that that is actively telling him that you're not going to get involved. That is actively emboldening this particular individual to continue with what he's doing. The only distinction between that illustration and what we have here is that it was done implicitly. He knows that they're being called to each one of these incidents. He knows they're standing over and cajoling this witness. Whether he knows that the investigations are happening or not is an arguable point. But when the investigative files, not one, both of them disappear conveniently. All of that combines to paint a very clear picture to any reasonable finder of fact that they knew what was indicated to him that they weren't going to do anything. All of this has been dealt with in the Second Circuit decision of Okun versus Village of Cornwall which has been briefed extensively to the court. But for purposes of clarification and clarity here I want to make sure the court understands. Those are two separate issues. Yes we could go down the implicit assurance path and I have asked this court to consider Okun and perhaps even consider adopting it in deciding whether there were implicit assurances made to Deputy Rager. But the court doesn't have to do that because there was active conduct here as well. Actively making investigative files disappear, actively cleansing a personnel record, actively cajoling the witness. All of that is Mr. Roger? What's his name? Rager. Deputy Rager. He didn't have knowledge of those things. We have not designated that he has knowledge of those things. So you're pretty much then relying on the cajoling during the second incident. Yes. Okay. That said, there is also a Monell claim here. And the Monell claim is based on the fact that there is an absolute failure of training in this particular Sheriff's Department as to how to handle domestic abuse victims and calls. And I won't belabor the briefing that has been done for the court, but suffice it to say there's an evidentiary dispute going on here as to whether there is any evidence at all in this record that this particular Sheriff's Department had any kind of training whatsoever. As I recall the only evidence you've submitted on that point is that the pre-basic training did not include training regarding how to handle a domestic abuse matter. That's correct. And when the discovery request was directed to show us all training that was received in domestic violence, and that's the only response that's given, our argument is it is perhaps inappropriate to implicitly request judicial notice of an Indiana regulation and pointing this court to a website about a training that happened eight years after my client, or after Deputy Rager, was involved. So there is an evidentiary issue here. Based on the record that the court has before it, there is no evidence of any training on domestic violence situations in this particular department. Based upon that, the Monell failure to train claim should have gone to the jury regardless of anything else that we have discussed. Unless the court has further questions, I'd like to hear them. Mr. Stephenson. May it please the court. James Stephenson for the Appellees. With regard to the Monell argument, plaintiff fails to acknowledge that Monell requires an underlying constitutional deprivation to begin with. So even if there were inadequate training, which is not the case I might add, there has to be deliberate indifference by the policymaker to the need for additional training in order to avoid events of this nature. So the entire Monell argument is simply not meritorious. I'd like to open my remarks, Your Honors, in connection with the affirmative conduct required for purposes of meeting the exception under the Descheny rule. Affirmative conduct, in order to meet the Descheny exception, is conduct which is affirmative action which places the plaintiff in a position of danger that she wasn't otherwise in. The defendant must be required to do something that turns a potential danger into an actual one as opposed to not taking steps to prevent it. There's certainly no Seventh Circuit authority extending the concept of affirmatively creating or increasing a danger to include acts or omissions that communicate, be it explicitly or implicitly, that private violence by an individual will go unpunished. There's no law that supports the nature of their claim under the Descheny exception. Counsel, what if anything did the Hancock Sheriff's Office do to protect this woman? Well... Did they do anything? I believe they did. They responded to... By the way, the first two events occurred in 2009. They were investigated by a different department. They were not investigated by the Hancock County Sheriff. There was an event in June of 2012 which involved a key being thrown and this sort of thing. No plaintiff was talked to. A memo was put, created, and that was the end of it. Two weeks later, there was a so-called major event because there was at least allegations of physical abuse, although the plaintiff wouldn't acknowledge it. She was interviewed. She was asked to give a statement. She didn't want to get him into trouble. The sheriff knew about it and enlisted the detective to do a full investigation, which he did. Unfortunately, it was misfiled. It wasn't seen by the sheriff until after the October of 2013. So we have an entire year between June of 2012 and October of 2013 when he's arrested, during which the department is of the view that they're getting along, or at least no notice is being given to them that anything is going on of an untoward nature. I'm sorry. Did you say that the Hancock Sheriff's Department was not involved in the incidents in June of 2012? They were, but not the 2009 ones. Okay. The council talks about five incidents. I don't know about five. If he's including the ones investigated by McCordsville in 2009, it could amount to five. But we're talking about two incidents in June, only one of which involved physical contact. A year's hiatus where nothing's going on. Then in July of 2013, she complains to the captain about these text messages, not about physical abuse. He tells her to create a protective order. He had counseled both of them. He told Rager to secure employee counseling. I do think the sheriff's department did quite a bit. And frankly, there's no evidence the defendants approved or condoned any of his conduct. The record is just the opposite. He was told his behavior was inappropriate and that it needed to stop. With regard to implicit encouragement, again, this appears solely in the Second Circuit case, which involved more serious facts than present here. It's never been endorsed by this circuit, nor by any other circuit for that matter. In fact, this circuit, in the case of McCordsville, essentially rejected implicit encouragement as being a basis for an exception under the DeShaney rule. And as the district court determined, even if we were to adopt implicit encouragement, such as in the Second Circuit, our facts are highly distinguishable from those in the New York case that the appellant relies upon. Because here the officers, as indicated, they interviewed this Rager, prepared reports, initiated investigations, took pictures of her text messages that she thought were offensive, told her to get a protective order, reprimanded him. This is hardly encouragement in my view that can support a constitutional violation. The district court was also correct in terms of affording qualified immunity. Clearly, we don't have clearly established law in this circuit to support constitutional liability. And more importantly, well, equally importantly, what is the basis for individual liability against each of these officers? This is constitutional liability. We have to ask, how did each of them deprive her of a constitutional right? What did the sheriff do? He asked the detective to prepare a report after he heard about this June 2012 incident. What did the detective do? He prepared the report. It got misfiled, but he prepared it. What did Captain Campbell do? He interacted with both of them multiple times and gave them advice and told them to stay apart. And what did Burkhart do? I'm still at a mystery as to what plaintiff claims defendant Burkhart even did. Whatever conduct they did or didn't do clearly doesn't rise to the level of shocking of the conscience, which is still the standard employed for substantive due process violations. I know there have been cases that have suggested perhaps it needs to be revisited as a standard, but it is the standard employed in this circuit and nationwide. And the district court correctly determined there was no evidence to support shocking of the conscience, certainly none that a reasonable jury could rely upon in I might also add on the qualified immunity, there's clearly no consensus nationwide. We look to Supreme Court authority, we look to circuit court authority, and then we only look outside the circuit if there's no authority within our circuit. Even if we look outside our circuit, though, we don't even find a consensus. In fact, we find one circuit that doesn't even recognize the Descheny exception as existing, because after all, it is dicta in the Descheny opinion. Finally, Your Honors, as to Monell liability, again, I think it's appropriate to simply advise the court that county deputies in Indiana are required by It is incorrect that the planes were sought during discovery any and all evidence of training for domestic training. What they sought by way of a discovery request was for off-duty officers, such as Roger, what training was available, what training our officers provided in terms of dealing with domestics for off-duty officers. So I don't think there was a lack of production of evidence along those lines in the discovery process. Even if there was, there's no underlying constitutional deprivation, and it's not the law in this circuit that specialized training is even required. The absence of specialized training does not equate to deficient training, and moreover, deliberate indifference to training needs requires evidence of prior circumstances which resulted in constitutional deprivations, which provide notice to the entity that there's a need for more training. Finally, on the state law claim, we request the court affirm entry of summary judgment on that as well, because the evidence does not meet the requirements for intentional infliction of emotional disarray. If there are no questions, I will conclude my argument. Thank you. Thank you, Mr. Stephenson. Anything further, Mr. Eggerson? Very briefly, Your Honor. Just as to a couple of points raised by Mr. Stephenson, first the suggestion that the facts of this case just aren't as bad as Okun. Ms. Wilson-Trapner would disagree with that. Okun involved someone who hung out at a bar with a bunch of the police officers in that particular village. This case involves one of their own. This case involves them circling the wagons to protect one of their own deputies. This case is much worse than Okun. Second, counsel suggests that the bullying cases out of this circuit may somehow tacitly undermine any claim that implicit assurances will be recognized in this jurisdiction. I've briefed this extensively in the reply brief, but I would just point out the Nabozny case in particular. This court explicitly leaves open the door that a showing could have been made in that case that failure to discipline those students could have risen to the level of a 1983 violation. It was just an absence of evidence that drove the ruling in Nabozny. Even if we accepted your arguments and found that there was a constitutional violation, how is it clearly established such that qualified immunity would not apply? As for the qualified immunity, please remember that there are two different ways to establish whether something is clearly established. The first is whether it has been recognized by most of the circuits or whatever that particular language is. Every circuit but the Fifth Circuit recognizes that police may not affirmatively increase the risk of harm to an individual. That is what has happened here. The only way defendants get around that is by narrowing the focus, making the analysis so specific that Okun would be the only way to meet that standard. If the court is going to narrow its focus to that level of specificity, the second prong is if it's patently obvious that they shouldn't be doing this, then you can also get around that. Do I recall, counsel, that the police involved advised her to separate herself from her assailant? They did. And she ignored it? She did. She went back for more? She did. Human beings are odd people altogether. I don't disagree with that at all, Your Honor. How many times did she go back? She went back. She was even back with him after they terminated him. What they failed to do was to protect her from herself, but I don't know how you do that. Your Honor, I see that my time has expired. May I briefly respond? So let me ask you, it would be your position that it's clearly established under DeShaney that this conduct was unconstitutional? It is clearly established under DeShaney that police may not affirmatively increase the risk. It's patently obvious that police shouldn't be making investigative files disappear and cleansing personnel records. Either way, I'm not sure. I'm sorry to engage in prolonged questions, but I don't know why you keep talking about that, because you've already acknowledged twice that the gentleman had no knowledge of that, and so it seems to me that you've gone in another direction. No, because qualified immunity isn't going to turn on the deputy's knowledge. Okay. Thank you. I appreciate your time. Thank you to both counsel. The case is adjourned under advisement.